Hi, Illinois Telecord 3rd Division is now in session. The Honorable Justice Jesse D. Reyes is silent. Please have a seat. People versus Maldonado. When counsels are going to argue this matter, please approach the podium. And keep in mind that it only records, it doesn't amplify, so keep your voices up. And please approach the podium and identify yourselves and the party that you represent. Good morning, Your Honors. My name is Chris Gerke. I represent Cesar Maldonado. Good afternoon, Your Honors. Assistant State's Attorney Adam Motz, MOTZ, for the people of the state of Illinois. Okay. So 15 minutes apiece. Any time for rebuttal, counsel? Five minutes, yes. Five minutes. All right. You may proceed. May it please the Court, Your Honors, counsel. Good morning. Cesar Maldonado was convicted of aggravated battery with a firearm in a case that turned entirely on witness identification. After he was convicted, however, after a bench trial where the trial court inaccurately recalled important defense evidence that undermined the State's witness identification testimony. And after he was convicted, he was sentenced after a sentencing hearing where the court incorrectly characterized, mischaracterized the offense as involving two rival gangs fighting against each other. And in general, the court expounded at great length about his personal opinion about gangs and about his personal knowledge about gangs in a case where gangs were barely even mentioned, if at all. And for those reasons, we ask that you find that my client was denied either due process in a fair trial or denied a fair sentencing hearing. Well, in regards to the witnesses, weren't there several witnesses involved there? And a couple of them had actually identified the defendant as the shooter? So this case really came down primarily to one witness. There were other witnesses that identified. My question is, weren't there other witnesses that were there at the scene who identified the defendant as the shooter and then later on identified him in a photo array as well? There were four witnesses, Your Honor. Okay. One of which could not identify anybody. And then the other one, Jorge Villa, contradicted himself every time. He'd make an identification, couldn't identify my client in court. The other two did not make an identification on the day of the shooting. First made an identification two weeks later, and only after they admitted that they had spoken with Jorge Villa, the State's key witness, quote, they had lots of conversations about her before then. And one of those witnesses... And these four people were friends, right? They were friends, right. And one of those witnesses, Miguel Soto, admitted that he had no idea who Maldonado was and that the two of the other witnesses, Landon and Villa, told him who Maldonado was and showed him pictures of Maldonado on Facebook before he made his identification. So the error here relates primarily to... But it wasn't like they just knew him from the street. They knew him from high school. Isn't that correct? Correct, Your Honor. So it wasn't like they just saw this guy once and, you know, were later identifying. They knew him extensively from high school. Correct, Your Honor. Doesn't that go to the veracity or the reliability of the identification? It does, Your Honor. To be clear, the issue here isn't the admissibility of the identification. The issue here is the court's misrecollection of important defense testimony that went directly to whether my client had his defense properly considered in a case where identification was the key issue. And in this case, the... Let me just interrupt you for a second. So what's your standard of review with regards to the alleged inaccurate recalling of testimony by the trial court? Your Honor, I think the standard of review on this is, I would say de novo. I mean, it's not really clear in the case law. This is an issue if you look at Peeble v. Mitchell and Peeble v. Bowie. I don't think they set out a specific standard of review, but the question here is in general you do defer to a trial court when you're trying to figure out whether they considered competent evidence. But if the record shows that they did not consider competent evidence, as in this case, or the record shows that they, the court in this case, misunderstood or inaccurately recalled what the defense evidence was, when the record shows that, you know, I don't think we can say that the court, you know, abused his, you know, it's a question of whether you defer to the court when they clearly did misstate or misremember the evidence. And then what about the comments that the trial court made with regards to gang membership? What's our standard of review with regards to that? A standard of review for that is de novo, I believe, because the issue is the improper considerate. Generally, you do defer to a trial court when you're making sentencing findings, but when the issue is the court's consideration of improper aggravating factors, review is de novo. Okay. I interrupted. You should go ahead and proceed. No problem, Your Honor. So that's back to the first issue. In this case, defense witness Alexander Fernandez, who was dating key state witness Jorge Villa, testified that he repeatedly told her that he was actually not sure about the identification of my client that he made to the police previously. As I said, they were dating at the time. They were seeing each other four or five days a week. The trial court, in this bench trial, rejected Fernandez's testimony ultimately and credited Villa's testimony as sufficient, quote, alone to prove my client's guilt, but only did so after it misremembered what Fernandez actually testified about. And what was the basis of trial court's dismissing her testimony? Well, I'll get into it, Your Honor. The first thing the trial court said was that he didn't believe they ever talked about the identification at all. But both of them testified that they did. Both the state's witness Villa and both Fernandez testified that they did discuss Maldonado's identification. Second, the court found that Fernandez gave an unbelievable account, that Maldonado just spontaneously showed her a picture. I'm sorry, that Mr. Villa spontaneously showed a picture of Maldonado on his phone just so that he could discredit himself. But that's not what Ms. Fernandez testified to. She testified that, again, they were dating. He was trying to show her a picture of something else. That's a quote, something else on his phone. As he was scrolling through, she saw a picture of Maldonado, who she knew from high school, and she asked about him, at which point he said, I think that's the guy that shot me. But thereafter, he repeatedly expressed his uncertainty. So the court got that fact wrong. So getting back to Justice Burke's point, I mean, Maldonado, Fernandez, and the defendant here all went to the same high school. They were from the same neighborhood, right? Correct. So the third point on that is – But Landon also went to that same high school, right? I think Landon and Villa went to the same high school as Maldonado. Correct. And Landon also identified this guy, didn't he? He did, but only did so two weeks afterwards, after he admitted he spoke with Maldonado several times. And I'll remind the court, too, this wasn't a situation where – With Maldonado? I'm sorry, with Villa several times. And I'll remind the court this was a shooting. Uribe testified that he could make an identification because when gunshots were fired, he ducked down right away. And so there are certainly facts related to just the process of the events and how they took place that do, I think, shed some doubt on the identification. But I'll remind the court this is not a sufficiency issue. The question here is not whether the State provided sufficient identification evidence. The question here is whether the Court's misremembering of important defense evidence that went directly to the central issue in this trial denied my client a fair trial. Central issue being the identification of the defendant? Correct. So, okay, I think we have a disconnect here. We're saying the identification is solid because of the reliability of people who knew him from high school. And you're saying, no, no, no, you've got to look at this other stuff. So why don't you tell us what exactly is sufficient enough to tear down an identification of multiple people who knew the guy from high school? I'd be happy to, Uribe. Okay. And, again, I'm only saying this because you used the word sufficient. Again, this isn't a sufficiency case. I got it. Okay. I got it. So just making that clear. So Villa, for example, let's start with him. His identification, he was the only one who was able to identify my client on the date of the shooting to one officer. He told another officer the same day he didn't know who the shooter was. But that happens in every single gang case. Every gang case has identification hesitation. And they bring him in front of the grand jury. You know that. Sure, Your Honor. But, again, if the issue is whether the evidence is overwhelming in this case, if this error, if the question is whether this error is harmless, or whether the evidence is overwhelming, it's not. Because there are reasons, good reasons, to question the reliability and credibility of each of these witnesses. Again, so we have Villa on the day of the shooting telling one officer he could, he could identify one officer he couldn't. Later, two weeks later, he identified my client from a photo array. But after that, he told Fernandez he wasn't actually sure. Then at trial, he testified that Maldonado was the shooter and that he was wearing a black hoodie. The parties stipulated that he told a different officer on the day of the shooting that the shooter was an unknown person wearing a red hoodie. And he couldn't even identify my client in court. He was given several opportunities to do so, and he couldn't identify my client in court. And that was the State's best witness. The other two witnesses, again, one of the witnesses couldn't make an identification at all. And the other two witnesses, Landon and Sorto, did not make an identification for two weeks. And they did so only after they said they had, quote, lots of conversations with Villa about it. So, again, the issue here is not whether, you know, a rational fact finder could conceivably find that this testimony was sufficient. The question is whether, did this error in the Court's misrecollecting important defense testimony that went directly to the State's key witness, was that error harmless beyond a reasonable doubt? And our argument is that it's not, because the State's identification evidence was not overwhelming. This could have affected the outcome of the case. Particularly with Fernandez's testimony, each of the errors the Court made went directly to the conversation that she had with Villa in which he expressed his uncertainty about the identification. But didn't the trial judge find Ms. Fernandez to be not credible, to be incredible? And isn't that the trial judge's province? It's not our province to judge the credibility of the witnesses and what he gave weight to versus what he didn't. All right. So a couple responses to that. First is that the trial court did say he did not give weight to Ms. Fernandez's testimony, but he only did so after he misremembered what she actually said and said that he didn't believe. What was that again? I didn't catch that in your response. The trial court did say that he did not want to give much weight. Either that he didn't give her much weight or that he did not find her to be credible. But he only did so after he misremembered her testimony. He said, he already said at that point that he didn't think they had a conversation. He already mischaracterized the nature of the conversation they had. And that's the third point, which I didn't get to. He also tried to excuse. He said even if he did express his doubt about the identification, he must have only done so because Ms. Fernandez was pregnant with Mr. Maldonado's child. I remind this court that they had a one-night stand before the shooting before they started dating. But the record shows that Ms. Fernandez herself didn't even know she was pregnant at that time. So I think we can divorce the time. Was it the time of the trial or the time of the interview? The time of the conversation, Your Honor. And so I think we divorce the court's assessment of her credibility or the assessment of her, the weight due to her testimony from the fact that he misremembered, he did not clerically remember what she said. And also to know that she had a credibility issue. She was dating one guy that was the shooter. And it turns out he's the father of her child. And the other one is the victim.  She had a one-night stand. Well, they had been boyfriend and girlfriend. They're having a child together. So clearly there's a relationship. Sure. So they had a relationship in high school and then this is several years after. They were boyfriend and girlfriend in high school. Correct. Wait a minute. What was several years later? I said several years later. Yeah. So they had a relationship in high school. Right. That's happened when my client was 19. They had a one-night stand after which she was pregnant, right? Yes, she got pregnant, correct. All right. With Maldonado's child. Correct. Yes. Okay, and then Via gets shot by Maldonado. Right. And then now she's testifying against Via. Correct. And questioning his identification, right? Yes. So you don't think that's a credibility problem? Well, I think it's an assessment that the court and that this court can take into account. But, again, the issue here is was there, did the court misremember the defense evidence? And if the question, if you're asking whether the evidence is harmless or not, you do look at the balance of the rest of the evidence. But you certainly don't defer to the trial court when you're talking about whether the trial court erred in this case. That's something I want to make very clear, is that when we're discussing whether the court misremembered the evidence, there's not really a dispute about that. The State doesn't disagree with any of the facts that I just related. It doesn't really disagree that the court did not accurately recall the defense evidence. And so you don't defer to the court for that. And you certainly don't defer to the court for a harmless error analysis. That's an objective standard. Was there any evidence in the record about Maldonado and Villa knowing about each other having dated the same girl? So Fernandez testified that she, after she discovered that she was pregnant, which was after the conversations in which Villa expressed his uncertainty to her, she said when she discovered that she was pregnant, she told both of them, I think, around the same time. Okay. But prior to the shooting, did Maldonado and Villa know that they had been dating the same girl? No, they did not. How do we know that? Well, because she testified to that and nobody testified otherwise. Okay. So no one crossed on it? Not to my recollection, Your Honor. Okay. And again, I'd like to reiterate, she had a one-night stand. She did not know that she was pregnant when she spoke with Villa when he had this conversation. So that was another mistake that the court made. And so the issue here, again, it's not really disputed that the court misremembered the defense evidence. I don't think it can really honestly be disputed that this was evidence that was crucial to the defense as it related directly to the State's key witness in a pure identification case where her testimony undermined the credibility of his identification to the police. And so the only question left is whether there's harmless error. And for the reasons I just discussed, I don't think this Court can find that this error was harmless beyond any reasonable doubt, considering that Villa contradicted himself at every moment. We have Uri being on and making identification, and the only other two other witnesses identified him two weeks later, based on lots of conversations when they were talking with each other about it. And again, one of those witnesses had no idea who Maldonado was and said that the other two witnesses showed him pictures of Maldonado before he made his identification. So I don't think the State's eyewitness identification testimony in this case was overwhelming. And therefore, we respectfully ask that you find that that was a due process violation when the court misremembered that important defense evidence in this case. Now, unless there are no other questions about the first issue, I'd like to move on to the second issue. Okay. Please do. Thank you. The trial court's sentencing hearing in this case, the second issue we'd ask that you find that, by Climson, not a fair sentencing hearing. The trial court's sentencing hearing in this case was essentially all about gangs, in a case where gangs were not, were barely mentioned, if at all. The first problem is that the court improperly concluded that the shooting in this case was motivated by a gang rivalry or a gang dispute. The court's sentencing hearing. Didn't your client mention the fact that he was with, I think they're called the Milwaukee Kings? No, Your Honor. My client never said anything. That was a, so in the PSI, there was a single statement in the peer association section that said my client was, quote, affiliated with the Milwaukee Kings when he was 17 years old. And you're saying that that can't be relied on by the court? I'm saying that that doesn't show that the shooting involved two rival gangs. It sure gives a good indication it might have something to do with it. Don't you think, counsel? Perhaps, Your Honor. But again, we can't speculate on that. And the court wasn't allowed to speculate on that. And it wasn't just that either. Right, counsel? Somebody talked about the members. They knew they were members. There were people following him. So one witness, Landon, said that he saw members following my client. Doesn't mention a gang. Doesn't even mention the name of the gang. There's no evidence of any gang dispute. There's no evidence of any gang territory. One of the witnesses said he saw them throwing gang signs. One of the witnesses said that he saw a group of people on the corner before the shooting. If you recall the evidence, the van drove past a group of people on the corner. And then after that, there's a shooting much farther down the block or on the next block. One witness out of the four said that he saw the people on the corner were flashing gang signs. But we still don't have the name of the gang. We still don't have the name of the gang. And regardless, there's no indication of my client's name. Do we need the name of the gang? Say again? Do we need the name of the gang? Well, I think it would help show if there's a gang rivalry, it would help to show that there are actually two different gangs involved. If someone's flashing gang signals or signs to someone else, do you think they're going to stop and say, what gang are you? Or are they just going to take their gang signs and then just know that this is a gang? I think the main point for that, Your Honor, is that there's no evidence that my client was part of that group. So, like, again, there were people on the corner flashing gang signs. And that same witness that said, the only witness that said he saw gang signs, testified that the shooter was not part of that group. The shooter was 500 feet away. He was specifically asked whether that was, quote, the same person that was in that group or someone different. This is page 246 of the record. He testified it was, quote, someone different. Villa was asked a similar question. He said the shooter was, quote, not with those three people at all. Page 128 and 121 of the record. Landon testified the shooter was, quote, pretty far and, quote, by themselves. So the trial evidence doesn't really show that even if there were people on the corner, even if they did show flash gang signs, that they had anything to do with my client if he was the shooter who was 500 feet away at the time. And so you have this one isolated reference to gangs at trial. You have this vague reference to gang affiliation. I'll remind the Court, he didn't say gang member. He said gang affiliation, which could be, you know, he could be neighbors with gang members. He could have friends who are gang members. That's not really an indication that even if he's in the gang, and even if it was, there's no evidence that anybody in the van was part of the gang. There's no evidence that anybody in the van was a gang, or Sorto, or Villa, or Uribe. And so for the Court to characterize this as a rivalry between two opposing gangs, he said that there were people in the car, apparently one organization. Maldonado was from a different organization. This shooting involves, quote, opposing gang members. So for the Court to make those characterizations where at the very least we know there's zero evidence that anybody in the van is a member of the gang, that's improper. There's no evidence from which this Court could conclude that this is a rival gang member. There's no evidence that any of the victims were in a gang. But if it was the shooter, why would he be shooting at the van? Unless it was because it was rival gang members. We could speculate about that, Your Honor, but the Court's sentencing conclusions cannot be based on speculation. It has to be reasonably grounded in the evidence. The Court can't just guess about motivations, guess about these things. It has to be grounded in the evidence. And, again, even if these bare references to gang affiliation or one witness's reference to a group of people that did not invite my client. You can make reasonable inferences based on that, and so what you're characterizing as bald speculation could be a reasonable inference. My argument is that it would not be a reasonable inference, Your Honor, because the evidence doesn't support it. And isn't this part of your whole argument, doesn't it go to the sentencing? And what's wrong with the sentencing? I mean, it was way below what it could have been. Oh, you're saying because the sentence was lower, Your Honor? Yeah. The sentence wasn't nearly as high as it could have been. Sure, yeah, absolutely. It wasn't, but it was still a lengthy sentence. It was still a 25-year sentence or a 24-year sentence, Your Honor. But you're saying these gang references were made at the sentencing hearing. Correct, Your Honor, yeah. And so how do we know anything about how it influenced this judge in his decision-making? Because he didn't give what could have been a really big sentence, a much longer sentence, if he, you know, was just basing it on gangs. Right, Your Honor. But the standard is when an improper – if you find this is an improper factor, which we'd argue that it is, and this is just one of them. I haven't got to the second one yet. But if you find it's an improper aggravating factor, the presumption is that it affected the sentence and a new trial is warranted, unless this Court can determine by looking at the record that the consideration of that fact was, quote, so insignificant that it did not lead to a greater sentence. And that's the Illinois Supreme Court in Hyder. So this Court's – so if this Court finds it's an improper factor, it presumptively warrants a new sentencing hearing, unless this Court can determine that it was so insignificant it could not have affected the sentence. And I don't think this Court can make that determination here, particularly because he did receive – he did not receive, you know, the maximum sentence, but he received a significant sentence that was more than double the minimum. He received – he received lots of mitigation in this case. He was, you know, traumatic childhood. His father was in prison until he was 13. He witnessed his cousin being murdered when he was 16. His stepfather was murdered when he was 16. He's got PTSD, depression. He was only 19 when he committed this offense. And so when you take that into consideration, and then you take in the fact that the State doesn't dispute that these gang considerations were permeated the entirety of the sentencing hearing. The main focus of this was gang considerations, in particular the gang rivalry, that there's no evidence that this involves two opposing gangs, and the Court's own personal opinion about gangs and outside knowledge about gangs. So the Court expressed his own personal opinion that, you know, gangs were, you know, silly nonsense stuff, and he kept referencing what appeared to be his experience presiding over other gang cases involving information that has nothing to do with this case. He kept saying, I've seen this so many times before. There's no happy endings. Every day I come out and I see it. I see different stuff. This gang nonsense. 2-6, Latin Kings, all of this silly stuff. That has nothing to do with this case, and it's well established in the law that sentencing considerations have to be based and grounded on the actual evidence in the case. It can't be based on personal opinion. It can't be based on outside knowledge. So are we saying that there was gang signals being flashed before the incident took place, and then what's his name, Landon, saying that there were a group of members also, and then the PSI report indicating that he was affiliated with a gang since he was 17 years old. Right. Hold on, hold on, hold on. Isn't it enough? What do we need? How much more do we need? Well, I'll point out, when you really mention the name of a gang sign on it, but I think you need a connection, right? So when you really talked about the group of members of the gang, as I explained, each state witnessed it. It sounds like you're arguing that they had to show motive in order to link up all this gang stuff. Certainly not, Your Honor. But the court expressed his belief, again. So the issue here is that the court, if the court had just said, you know, I signed this affiliation with a gang to be aggravating, I don't think we'd have much of an argument. But the court didn't find that. The court, first of all, mischaracterized the event as involving two opposing gangs, of which there is zero evidence, again, that anybody in the van is involved in the gang at the very least. And also, the court expressed his personal opinion and an outside knowledge about gangs. So even if there is some evidence in the record about gangs, you still can't rely on your own personal opinion or your outside knowledge of what happens in other gang cases. I mean, there are two cases I saw with Rosa and Gonzalez specifically held. Those were indisputably gang shootings. And the court held in those cases that the court's personal commentary about, like, the dangers, you know, the cowardice of gang members and the dangers of gangs in Chicago society warranted a new trial. And, again, in a case where that was indisputably a gang shooting. So, again, so there's two separate sentencing issues here. One is the court's mischaracterization of this as being a gang dispute between two rival gangs. And the other is the court's reliance on personal knowledge and outside – I'm sorry, personal opinion and outside knowledge. And so I'd like to emphasize the distinction between those two. Okay. One last question on the PSI. Sure. How did the information in the PSI get in there, given the fact that the defendant reported that he has been affiliated with a gang? So he self-reported it, right? Again, he said that he was affiliated with the gang. And affiliation is not the same as a gang membership. There's case law that recognizes the difference between affiliation and gang membership. They're in the Supreme Court. But he's self-reporting that, counsel. It's not like somebody has seen him hanging out. It's he's self-reporting an affiliation. It takes it to a slightly different level, don't you think? Your Honor, I believe if he says the PSI says he self-reported, I'll recall if that he actually said he self-reported. But even if he did, he's self-reporting that he has an affiliation with that gang. Correct. That doesn't mean he's a gang member. It doesn't necessarily mean he's a gang member. It means that he has an affiliation with people. He could just mean that he has an affiliation with people in a gang. And again, even if he's in a gang, that doesn't mean that this is a gang-related dispute. I saw the cases in my brief that says that the fact that a person is in a gang doesn't necessarily make the offense a gang offense, especially here. And that's the thing. The Court didn't just say gang affiliation when he aggravated my client's sentence and when he imposed his sentence. The Court said that this was repeated over and over again. This involved two opposing gangs. And again, regardless of what information in the record says that Maldonado may or may So there's zero evidence showing that this is a rivalry between two gangs that are fighting against each other. Well, you have time for a rebuttal. Why don't you just sum up? Sure. No, the thing about this case is that the judge substituted the actual facts and the evidence in this case for his own sort of speculation and his own facts, many of which actually contradicted the facts presented at trial. Again, the Court misremembered important defense evidence that went directly to the and relied on his personal opinion and outside knowledge of gangs. For those reasons, we respectfully ask that you grant either a new trial or new sentencing here. Thank you. Thank you. Okay. Counsel? So on these issues, should we engage in harmless error or plain error? Your Honor, the defendant admits that he failed to preserve this issue for review. So this Court should engage in a plain error analysis. However, if this Court does find that there was error, this Court would then shift to determine whether the error was harmless. In this case, the people maintain that there was no error. The trial court properly relied on the evidence to find defendant guilty of two counts of aggravated battery. And any misrecollection or misstatement of the evidence by the trial court was not crucial to the defense. This Court has stated that although the Court's failure to recall evidence crucial to the defense may rise to the level of a due process violation, a minor misstatement of the evidence that is not crucial to the defense does not violate due process. And the issues that defendant raises here with the trial court's remarks were not crucial to his defense. As Your Honors have noted, as counsel noted during his argument, the key issue in this trial was identification. And the Court's remarks regarding whether Fernandez asked about a photo on Villa's phone or whether Villa volunteered that photo, that's not crucial to the issue of identification. The question about whether they ever spoke about the identification itself, both Villa and Fernandez testified they had a conversation about it, but they had conflicting testimony about whether Maldonado ever equivocated about whether it was Maldonado who shot him. Fernandez testified that Villa stated multiple times that he wasn't sure who shot him. But Villa was asked specifically on cross-examination twice, the record at pages 169 and 171, whether he ever said that he wasn't sure who shot him. Both times he was asked, Villa stated no. So the trial court was faced with conflicting testimony between Fernandez and Villa, as has already been noted. But didn't Villa at one point in time during his testimony say that he did discuss it with her? He did discuss the identification of Maldonado with her. He did say that I think this is the person who shot me. But Villa denied that he ever said he wasn't sure, which is what Fernandez repeatedly stated during her testimony. So the court was faced with these conflicting testimonies. And as is the province of the trier of fact, it had to resolve discrepancies in the evidence. And it found that Fernandez was not a credible witness, and it found that Villa was credible. And it noted reasons why it found him credible. He identified the defendant on the day of the shooting. He identified him two weeks later in a photo array. He pulled up a photo on Facebook and showed it to the officers and said, this is who shot me. With regard to whether the court ever discussed whether Villa was making his equivocations in an effort to date or, as the court said, get next to Fernandez, he did say he was making that point for the sake of argument. Let's assume for the sake of argument that Villa did say these things. I'm not saying that happened at all. I don't believe she talked to Villa about that whatsoever. And the people would also maintain that where the defendant says that the trial court stated that their conversation about the identification never happened, the people maintain that a fair reading of the court's remarks is that he doesn't believe that the conversation happened the way that Fernandez said it happened. So although the court's failure to ---- Did the court on its own motion disregard Fernandez's testimony or was there an objection made by the prosecutor at the time and asked the court to disregard the testimony? The court did consider her testimony along with the other testimonial evidence. It resolved the conflict in the testimony between Fernandez and Villa in favor of Villa. It found Villa to be the credible witness. And it also found credible Landin, Soto, and Uribe. Soto and Landin both identified the defendant as the shooter. As this court is well aware, the testimony of a single eyewitness is sufficient to sustain a conviction if positive and credible. Here we had three separate witnesses identify the defendant as the shooter. Even if the court disregarded Villa's testimony, it still could have relied on either or both of the identifications made by Landin and Soto. What about their argument that they discussed it afterwards? There is testimony that they discussed the shooting, but Landin actually testified specifically that they never discussed who to identify. Landin stated that he spoke with his friends about the shooting, but that they never discussed who to identify. So that would again fall to the trial court to determine which witnesses he believed to be credible to resolve any conflicts in the testimony. And the trial court did so here, found that the identification of Maldonado was credible, and ultimately found him guilty of the shooting. So the testimony was that they all agreed when they were discussing this that it was Maldonado, but they didn't discuss the identification? No, Your Honor. There's no testimony that they all agreed that it was Maldonado. In fact, Uribe couldn't even make an identification, which the trial court noted to discredit this notion that they all conspired together to pin the shooting on Maldonado. Uribe couldn't make an identification at all. Villa didn't make an identification in court. Landin and Soto made identifications in a photo array and in open court. So the idea that they were all conspiring to put this on Maldonado doesn't really fit with the evidence, and the trial court discussed that and ultimately made its determination. Who was the one that ducked down in the car? Was that Uribe? That was Uribe. Okay. Yes. Moving to the second point, Your Honor, the trial court considered proper sentencing factors in fashioning a sentence for defendant that was well within the statutory range and therefore presumptively proper. This court can look to the trial court's comments at sentencing to find that it considered several relevant statutory aggravating and mitigating factors, including what this court has long held to be the most serious – the most important factor, which is the seriousness of the crime. The court discussed what it referred to as an avalanche of gunfire that defendant unleashed on a minivan containing four occupants on a neighborhood street in Chicago. He struck two of them, seriously injured two of them, could have killed any or all of them. Well, is there any evidence that the occupants of the minivan were gang members? No, Your Honor. In fact, one of the witnesses was asked whether he was a member of a gang, and he specifically denied it. But regardless, the court – Well, what's – where's the evidence here that it was gang-related then? Well, as Your Honor's noted earlier, the pre-sentence investigation report noted that defendant self-reported that he's been affiliated with the Milwaukee King Street Gang since the age of 17. Now, defendant counters that that doesn't establish that he was a gang member. But whether he was a gang member or merely affiliated with a gang, that's a distinction without a difference. Well, how do we know that this wasn't a shooting as a result of a jilted lover? You know, because now Fernandez is with Villa and Villa's the one he's getting shot at, right? Well, Your Honor, at the time of the shooting, Maldonado did not know that Villa was romantically involved with Fernandez. Do we know that? Yes, Your Honor, there's testimony to that effect. Fernandez had relations with Maldonado in December. She started dating Villa in January, and she didn't – she had a discussion with Villa about the identification in February and didn't find out she was pregnant until mid-March. And she stated that in that intervening period, the two didn't know that they were involved with her at different points in time. But regarding defendant's gang affiliation, this Court has stated that it is proper for a court to consider a defendant's gang affiliation at sentencing where there's evidence. In Peeble v. Cornejo, in that case, prior to trial, the parties agreed that the offense itself was not gang-motivated. But this Court nevertheless held that the Court's consideration of defendant's gang affiliation was a proper consideration. Yeah, but defendant is arguing that affiliation doesn't mean anything. Just because you're affiliated with a gang doesn't mean you're a member of a gang. Well, this Court has stated otherwise, Your Honor. And in Cornejo, the Court did note that the statutory aggravating factor regarding gangs discusses whether the offense itself was gang-motivated. But this Court in Cornejo said, nonetheless, a trial court is not limited to considering statutory aggravating factors, but it may consider any factor consistent with the statute that would tend to aggravate the offense. And in that case, it stated that consideration of gang affiliation was, quote, proper. And this Court found that the sentencing court there properly weighed aggravating and mitigating factors before it, and it found that consideration of Cornejo's gang affiliation, again, was proper. The gang signs or signals that Uribe said that he saw, do we know what kind of gang signs they were? No, Your Honor. The testimony is simply that he saw all three of the men on the street corner flashing gang signs. So the trial court heard that evidence. It noted what was in the PSI report. As this Court is also aware, it's well settled that the evidentiary standards used in sentencing are much less rigid. The Court researched anywhere within reasonable bounds for other facts that tend to aggravate or mitigate the offense. But the people must note that this gang affiliation was not the Court's primary consideration in sentencing. Again, it focused on the seriousness of the crime. It discussed the severe injuries to the victims, the impact of the crime on the victims. It discussed the defendant's prior criminal history, which included an adult conviction for aggravated unlawful use of a weapon. It discussed evidence of mitigation, defendant's family ties, his status as a parent, his age. The Court noted that he'll be getting out someday, hopefully. And the Court also noted that it reviewed the PSI report, which indicated by defendant's own admission that he's been affiliated with the Milwaukee Kings Street Gang. There's no evidence in the record that the Court relied on defendant's gang affiliation to improperly aggravate the sentence. As Justice Walker noted, this sentence was not only well within the statutory range, it was at the lower end of the statutory range. It was an aggregate sentence of 25 years, 35 below the maximum. And the sentencing court itself stated that it tended to believe the sentence to be lenient. What about, getting back to Fernandez, what about the argument that the trial court, because this was a bench trial, right? Correct. Did the trial court misremember her testimony? Your Honor, the trial court, the trial court made a misstatement, minor misstatement regarding whether Fernandez saw a photo on Villa's phone or whether Villa volunteered to show her a photo on his phone. Again, that issue is not crucial to the defense, which is what this Court has stated must be present in order to rise to the level of a due process violation. Who saw the picture first, who asked about the picture first is not relevant to the issue of identification, which was the key issue here, and therefore it was not the crux of the defense that the trial court failed to recall. It was merely a minor misstatement, which this Court has stated does not affect, does not rise to the basis of a due process violation. If there are no further questions, respectfully conclude. Thank you. That's the court affirmed. Thank you. Your Honor, a few points. First of all, I'd like to point out the fact that opposing counsel kept referring to the province of the trial of fact, referring to a single identification being sufficient to sustain the conviction. That is a sufficiency of the evidence analysis. What the Court thought about his own error is not at issue here, and that's not a proper consideration for this case. I'll point out that, as I emphasized in my reply brief, almost every single case the State cited in support of their arguments were sufficiency cases. This is not a sufficiency case. This is an issue of whether my client was denied due process in a fair trial where the Court accurately considers his identification evidence. But then moving on to just the State's points, the State emphasizes, the State suggests that the Court doesn't misstate the evidence in this case, and that's clearly not true. Even the State just admitted that the Court at one point said he didn't believe they even had a conversation about this identification, and they certainly did. They both testified they did. It's true that the S.A. denied that he, you know, equivocated, but there's no question that they had that conversation. So for the Court to say that he didn't believe that they even had the conversation is, at the very least, is a clear error with respect that went directly to Ms. Fernandez's credibility and the credibility of the entire defense case. I'll also point out that the Court's sort of opinion about Fernandez has nothing to do with the harmless error analysis. Again, it's an objective standard. You can imagine an impartial judge and look at whether the evidence is overwhelming, and it's far from overwhelming here. I'll also point out, counsel mentioned Landon's testimony. I'll emphasize that Soto in particular testified that he had no idea who Maldonado was. I'd like to emphasize that. He had no idea who Maldonado was on the day of the shooting, and he only identified Maldonado two weeks later after Villa and Soto told him who he was and showed him Facebook pictures of Maldonado. So I want to emphasize that point because counsel suggested that. They showed each other Facebook pictures? They showed Facebook pictures. So Mr. Soto testified, although Villa and Landon tried to deny that trial, Mr. Soto admitted that they showed him pictures of Maldonado before the shooting. He had no idea who Maldonado was. And so he showed him pictures of Maldonado before he made his identification of Maldonado. So to the extent that the State is arguing that this isn't a harmless error because you can look to other witnesses' testimony, for the reasons I explained in my prior argument, there are numerous reasons to question the credibility and reliability of that testimony. As for the sentencing issue, again, the State is relying on sort of the wrong standards here. The State's arguments about, well, the court considered all this other evidence, you know, that's an excessive sentencing argument. This is an excessive sentencing argument. This is an improper aggravating factor argument. And this Court, and he referenced to Cornejo as holding that, you know, a court can consider gang affiliation. That's true, but that's not what the Court did here. The Court just didn't say that, oh, his gang affiliation is an aggravating factor. The Court said this is a gang rivalry between opposing gangs. And apart from that, the Court relied on information that's not in the record about his personal knowledge about gangs and his personal opinion about gangs, something I don't think the State even addressed when they got up here. The State's other argument is that, well, we don't know that this aggravated the sentence. I'll remind the Court again, if a court considers improper factors, there's presumptive that there needs to be a new sentencing hearing unless this Court can determine based on the record that the consideration was so insignificant that it did not lead to a greater sentence. Are you drawing a distinction between personal knowledge and personal opinion? Yes, Your Honor, I am. Because the personal knowledge would be based on, for example, the Court referenced other cases. He kept saying that, oh, I've seen this so many times before, for example, 2-6, Latin  So that would be the Court's knowledge of other outside cases, of information outside the record. And personal opinion is just what he thinks about gangs. Stop calling it silly nonsense stuff, that this is ridiculous conduct. So there are two different things, but they're related. And neither of them are actually based on evidence in the record, which is why it's an improper aggravating factor. And finally, again, the State made the argument that, you know, it wasn't the Court's primary consideration. I'll add two points to that. First of all, I don't think the State can dispute, and Your Honors, I'm sure you've seen or you will see, when you look at a sentencing hearing, that these gang considerations permeated the entirety of the sentencing hearing. Again, in the case where gangs were barely even mentioned. But it doesn't have to be the primary consideration. Again, if the Court considers an improper aggravating factor at sentencing, it's this Court's duty to determine whether it can determine, based on the record, that it was so insignificant, that that consideration was so insignificant that it can tell that it did not affect the sentence. And I think on that standard, when you look at the record here, you cannot withdraw that conclusion. And Your Honors, I respectfully ask that you find that my client was denied due process or for a sentencing hearing, and either grant him a new trial or a new sentencing hearing. Thank you. All right. I want to thank counsels for a well-argued matter. The Court will take it under advisement, and the Court is adjourned.